THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **BRIDGEWAY INSURANCE COMPANY,** § § § § | |
| Plaintiff, § § | CIVIL ACTION NO. 3:24-3846-JFA |
| v. § § | |
| **BRIAN CENTER / ST. ANDREWS, LLC, d/b/a BRIAN CENTER OF NURSING CARE - ST. ANDREWS; JAMES M. MCCOLLUM; and GINA COSOLA AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROGER GAGNON,** § § § § § § § § § | |
| Defendants. § § § | |

## COMPLAINT

Bridgeway Insurance Company ("Bridgeway") sues Brian Center / St. Andrews, LLC, d/b/a Brian Center of Nursing Care - St. Andrews ("Brian Center"), James M. McCollum, (collectively, the "Brian Center Defendants") and Gina Cosola as Personal Representative of the Estate of Roger Gagnon ("Cosola") for declaratory relief and states as follows:

### INTRODUCTION

1. This is an insurance coverage action regarding coverage for claims asserted against the Brian Center Defendants in an underlying lawsuit styled *Gina Cosola as Personal Representative of the Estate of Roger Gagnon v. Brian Center/St. Andrews, LLC, D/B/A Brian Center of Nursing Care - St. Andrews, and James M. McCollum*, No. 2024-CP-32-00554 in the Lexington County, South Carolina Court of Common Pleas (the "Underlying Lawsuit").

2. In the Underlying Lawsuit, Cosola alleges negligence/gross negligence by the Brian Center Defendants in connection with the death of Roger Gagnon while he was a resident at the Brian Center. On March 26, 2024, an order of default was entered against the Brian Center Defendants in the Underlying Lawsuit. On May 17, 2024, the Brian Center Defendants' Motion to Set Aside Order of Default was denied.

3. In this action, Bridgeway seeks a declaratory judgment regarding Bridgeway's obligations in connection with a Healthcare Professional Liability Insurance Policy and a Healthcare Umbrella Liability Insurance Policy that Bridgeway issued and under which the Brian Center is a named insured.

4. Specifically, Bridgeway seeks a declaration that it has no duty under the above-referenced policies to: (1) defend the Brian Center Defendants or any related entity in the Underlying Lawsuit; or (2) indemnify the Brian Center Defendants or any related entity for damages arising out of the order of default entered by the court in the Underlying Lawsuit.

5. Bridgeway names Cosola as a party potentially interested in the declaratory relief sought in this action.

**PARTIES**

6. Bridgeway Insurance Company is a corporation incorporated in Delaware with its principal place of business in New Jersey.

7. The Brian Center is a North Carolina limited liability company. Upon information and belief, the Brian Center's members are citizens of Florida and North Carolina.

8. James McCollum is a natural person. Upon information and belief, Mr. McCollum is a citizen of South Carolina.

9. Gina Cosola is a natural person. Upon information and belief, Ms. Cosola is a citizen of South Carolina.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction over this claim for declaratory relief under 28 U.S.C. § 1332, because this is an action between citizens of different States and the amount in controversy exceeds $75,000.

11. Venue is proper in this Court under 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims raised in this complaint occurred in this judicial district.

**FACTS**

*The Underlying Lawsuit*

12. On October 12, 2021, Roger Gagnon, an 83-year-old resident of the Brian Center, died after being found unresponsive at the Brian Center.

13. Cosola, as personal representative of the Estate of Roger Gagnon, is the plaintiff in the Underlying Lawsuit (the "Plaintiff"), which she initiated on October 26, 2023 by filing a Notice of ADR/Notice of Intent to File Suit and accompanying documents in the Lexington County, South Carolina Court of Common Pleas. A copy of the October 26, 2023 filing is attached as **Exhibit 1.**

14. On or about November 13, 2023, a cover letter, Notice of Intent to File Suit, Summons, Draft Complaint, Standard Interrogatories for Notice of Intent, Plaintiff's Answer to Standard Interrogatories for Notice of Intent, and the Affidavit of Merit of Barbara Messing, PhD, CCC-SLP, BCS-S, FASHA were served on the Brian Center via hand delivery. A copy of the Affidavit of Service is attached as **Exhibit 2**.

15. A Brian Center employee named Rowena received the documents and gave them to Wayne Blum, the Administrator of the Brian Center since April 11, 2022, who immediately forwarded the Notice to the General Counsel, which is Mr. Blum's practice "every time [the Brian Center] receive[s] legal documents." May 9, 2023 Affidavit of Wayne Blum, attached as **Exhibit 3**, at ¶ 5.

16. On or about November 9, 2023, a cover letter, Notice of Intent to File Suit, Summons, Draft Complaint, Standard Interrogatories for Notice of Intent, Plaintiff's Answer to Standard Interrogatories for Notice of Intent, and the Affidavit of Merit of Barbara Messing, PhD, CCC-SLP, BCS-S, FASHA were served on the registered agent for the Brian Center. A copy of the Affidavit of Service is attached as **Exhibit 4**.

17. On or about November 12, 2023, a cover letter, Notice of Intent to File Suit, Summons, Draft Complaint, Standard Interrogatories for Notice of Intent, Plaintiff's Answer to Standard Interrogatories for Notice of Intent, and the Affidavit of Merit of Barbara Messing, PhD, CCC-SLP, BCS-S, FASHA were served on James M. McCollum. A copy of the Affidavit of Service is attached as **Exhibit 5**.

18. A pre-suit mediation was held on January 23, 2024. The neutral, Marion C. Fairey, Jr., noted that "Defendant was served with date, time, and location of mediation, however, no one appeared on behalf of Defendant." January 23, 2024 Proof of ADR or Exemption, attached as **Exhibit 6**, at ¶ B.9.

19. On February 5, 2024, the Plaintiff filed her Summons and Complaint against the Brian Center and James McCollum as administrator of the Brian Center. *See* Complaint attached as **Exhibit 7**.

20. The cover letter, Summons, Complaint, and Affidavit of Ms. Messing was served on Wayne Blum as Administrator for Brian Center/St. Andrews, LLC at the Brian Center's address on February 7, 2024. A copy of the Affidavit of Service is attached as **Exhibit 8**

21. James McCollum was personally served on February 9, 2024. A copy of the Affidavit of Service is attached as **Exhibit 9**.

22. At 10:51 a.m. on March 18, 2024, Plaintiff's Counsel filed an Affidavit of Default. A copy of the Affidavit of Default is attached as **Exhibit 10**.

23. At 4:55 p.m. on March 18, 2024, counsel retained by the defendants filed an Answer. A copy of the Answer is attached as **Exhibit 11**.

24. On March 20, 2024, the Brian Center's third-party administrator sent Bridgeway an updated notice of claim by the insured via email advising Bridgeway of the existence of the Underlying Lawsuit. A copy of the March 20, 2024 email is attached as **Exhibit 12**.

25. On March 26, 2024, the court entered an Order of Default. The Order of Default provided that the matter would be referred to a Special Referee to determine the amount of damages. A copy of the Order of Default is attached as **Exhibit 13**.

26. On March 26, 2024, Defendants filed a Motion to Set Aside Order of Default. A copy of the Motion to Set Aside Order of Default is attached as **Exhibit 14**.

27. On April 2, 2024, Bridgeway received a copy of the Order of Default from the Brian Center's third-party administrator. A copy of the April 2, 2024 email is attached as **Exhibit 15**.

28. On April 11, 2024, Bridgeway Senior Claims Specialist Kimberly A. Kirkpatrick sent an acknowledgement letter to the Brian Center's third-party administrator, copying the insured and defense counsel retained by the insured. Ms. Kirkpatrick requested that the third-party administrator for the Brian Center update his file to reflect that the claim had been assigned to her and also requested a copy of the underlying complaint. Ms. Kirkpatrick asked the third-party administrator to "keep [her] apprised of the SIR erosion throughout the pendency of this litigation," and "[k]indly instruct defense counsel to add [her] name to his distribution list as [Ms. Kirkpatrick] will be monitoring this matter closely." A copy of Ms. Kirkpatrick's April 11, 2024 email is attached as **Exhibit 16**.

29. On or about May 10, 2024, the Brian Center and Mr. McCollum filed a Memorandum of Support of Defendants' Motion to Set Aside Entry of Default. The memorandum was accompanied by an affidavit from Wayne Blum, the Administrator of Brian Center, in which Mr. Blum explained that although he recalled receiving the Notice of Intent to File Suit in November 2023, he had "no recollection of accepting service of the Summons and Complaint in this matter." Memorandum attached as **Exhibit 17**, Affidavit of Mr. Blum at ¶ 4. Mr. Blum had "thoroughly searched and investigated the facility for a copy of the Summons and Complaint, both hard copy and electronic, and there is no record of it at the Brian Center." *Id.*

30. On May 10, 2024, the Plaintiff filed Plaintiff's Response in Opposition to Defendants' Motion to Set Aside Entry of Default. A copy of the motion is attached as **Exhibit 18**.

31. On May 17, 2024, the court denied the Motion to Set Aside Entry of Default. A copy of the Order denying the Motion to Set Aside Entry of Default is attached as **Exhibit 19**.

### *The Policies*

32. Bridgeway issued a Healthcare Professional Liability Insurance Policy, numbered 8H-A7-MM-0002075-00 (the "Liability Policy"), as well as a Healthcare Umbrella Liability Insurance Policy, numbered 8H-A7-UM-0002012-00 (the "Umbrella Policy"), to the Brian Center for the policy period November 1, 2021 to November 1, 2022. A copy of the Liability Policy is attached as **Exhibit 20** and a copy of the Umbrella Policy is attached as **Exhibit 21**.

33. The Policies list Brian Center as an additional named insured. See **Ex. 20**, Declarations page 3 & **Ex. 21**, Declarations page 2.

34. The Liability Policy provides the Brian Center with, *inter alia*, professional liability coverage subject to the terms and conditions set forth in the Policy. *See generally* **Exhibit 20**. The

Policy defines "Insured" to include "any named insured, and any employee," among others. **Ex. 20 at** Section IV.D.

35. The Liability Policy provides healthcare professional liability coverage on a claims-made basis subject to a $1,000,000 per occurrence limit. The Liability Policy is subject to a $250,000 Self-Insured Retention ("SIR"). See **Ex. 20** Declarations.

36. The Liability Policy contains the following insuring agreement:

SECTION I. INSURING AGREEMENTS

    **A.    HEALTHCARE PROFESSIONAL LIABILITY COVERAGE (CLAIMS MADE)**

        1. The insurer will pay on behalf of the **insured** any **loss** that the insured becomes legally obligated to pay as a result of a **healthcare event** to which this insurance applies and is reported to the insurer in accordance with the loss reporting procedures. The most the insurer will pay for **loss** is subject to the limit of insurance as described in Section III. Limits Of Insurance and subject to the applicable Deductible.

        2. The Healthcare Professional Liability coverage applies only if:

            a. the injury is to a **resident** or **patient** and is caused by a **healthcare event** that occurs on or after the Retroactive Date, shown in the Declarations, and before the end of the **policy period** and takes place in the **coverage territory**; and

            b. the **claim** is made and reported to the insurer during the **policy period** in accordance with the Section IV. Conditions, Paragraph F. Duties in the Event of a Claim, Potential Claim or Request for Reimbursement of Expense Loss.

**Ex. 20 at** Section 1.A.

37. Section II of the Liability Policy addresses defense and settlement as follows:

    **SECTION II. DEFENSE AND SETTLEMENT**

    A. No **insured** shall admit liability, consent to any judgment, agree to any settlement or make any settlement offer which is reasonably likely to involve this policy without the insurer's prior written consent. The **insured** will act in good faith and

7

      not knowingly take any action that increases the insurer's exposure for **loss**, **expense loss** or **defense expenses** under this policy.

  B. The insurer will have the right and duty to defend the **insured** against any **suit** for **loss** to which this insurance applies. However, the insurer will have no duty to defend the **insured** against any **suit** for **loss** to which this insurance does not apply. The insurer may, at the insurer's discretion, investigate any **claim**, **occurrence** or **employee benefits wrongful act** and settle any **claim** or **suit** that may result. With respect to any **claim**, **occurrence** or **employee benefits wrongful act** the insurer investigates or settles or any **suit** against an **insured** the insurer defends, the insurer will pay expenses the insurer incurs and **defense expenses**. The following conditions apply:

    1. Timely payment of any applicable Deductible.

    2. The insurer's right and duty to defend ends when the applicable limit of insurance in the payment of **loss**, **expense loss**, and **defense expenses** (if applicable) are exhausted.

38. Pursuant to the SIR Endorsement, Section IV. Conditions, Paragraph F. Duties in the Event of a Claim, Potential Claim or Request for Reimbursement of Expense Loss, is deleted in its entirety and replaced with the following:

  F. **Duties in the Event of a Claim, Potential Claim or Request for Reimbursement of Expense Loss**

  1. The **insured** must see to it that the insurer is notified as soon as practicable of a **healthcare event**, **potential claim**, **employee benefits wrongful act**, **occurrence** or offense which may result in a **claim** or may or does result in any injury or damage, or a **claim** that is received by **Insured** that:

    a. a **designated insured** believes will result in **loss**, **defense expenses** (if applicable) or **expense loss** that exceeds the Self-Insured Retention;

    b. has a **loss** reserve that exceeds 50% of the Self-Insured Retention;

    c. has a demand that exceeds 50% of the Self-Insured Retention;

    d. involves or alleges any of the following:

***

    (9) death.

2. For **healthcare event**, **employee benefits wrongful act**, **occurrence** or offense which may result in a claim, to the extent possible, notice should include:

   a. how, when and where the **healthcare event**, **employee benefits wrongful act**, **occurrence** or offense took place;

   b. the names and addresses of any injured persons and witnesses; and

   c. the nature and location of any injury or damage arising out of the **healthcare event**, **employee benefits wrongful act**, **occurrence** or offense.

   Notice of a **healthcare event**, **employee benefits wrongful act**, **occurrence** or offense is not notice of a claim.

3. Subject to F.1. above, if a **claim** is received by any **insured**, the **insured** must:

   a. Immediately record the specifics of the **claim** and the date received;

   b. Immediately send the insurer copies of any demands, notices, summonses or legal papers received in connection with the **claim** or a **suit**;

   c. Authorize the insurer to obtain records and other information;

   d. Cooperate with the insurer in the investigation, defense against the **suit** upon exhaustion of the Self-Insured Retention, or settlement of the **claim**;

   e. Assist the insurer, upon its request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

   f. See to it that the insurer receives written notice of the **claim** as soon as practicable, but, as respects any coverage that applies on a claims made basis, but in no event later than 30 days after the expiration of the **policy period** or no later than the expiration of any applicable Extended Reporting Period, if provided.

   g. The **insured** shall report **expense loss** that is expected to exceed the Self-Insured Retention to the insurer within the applicable time period(s) set forth in the applicable Insuring Agreement.

4. With respect to Insuring Agreement, A. Healthcare Professional Liability Coverage and Claims-Made coverage under Insuring Agreement, B. General Liability:

    a. The **claim** or **potential claim** shall be considered to be first reported or first made at the earlier of the following times:

        (1) The date the insurer first receives written notice of the **claim** from an **insured**. However, all **claims** arising from the same **healthcare event** or **occurrence** will be deemed to have been made at the first of those **claims** is made in accordance with the loss reporting procedures; or

        (2) The date the insurer first receives written notice of the **potential claim** of the **healthcare event** or **occurrence** from an **insured**.

    Provided, such **claim** shall be reported to the insurer during the **policy period**, or during the **extended reporting period** if applicable.

    b. The terms and conditions of the policy in effect at the time when the **healthcare event** or **occurrence** any **claim** arising out of the **healthcare event** or **occurrence** is considered first reported or first made shall apply to all **claims** arising out of such **healthcare event** or **occurrence**.

    c. Only the policy in effect when the first such **claim** or **potential claim** is made and reported to the insurer, whichever is earlier, will apply to all related **claims** and **potential claims**, no matter when those related **claims** or **potential claims** are made, reported or discovered. If, prior to the effective date of this policy, the first such **claim** is made or **potential claim** is discovered, this policy will not apply to that **claim** or **potential claims**, or to any related **claim** made or **potential claims** reported during this **policy period** or any **extended reporting period**.

**Ex. 20,** Self-Insured Retention Endorsement Section F.

    39.    The Liability Policy sets forth the following relevant definitions:

    I. **Claim** means

        1.    a written demand or

        2.    **suit** against an **insured** for monetary damages.

    X. **Healthcare Event** means

        1.    any event in the rendering of or failing to render **professional services** that results in injury to a **resident** or **patient**. All injuries arising out of, or in connection with, the same or related acts, errors, or omissions in rendering or failing to render **professional services** shall be considered **one healthcare** event; or

      2.    any actual or alleged act, error or omission in connection with any **Good Samaritan Act**.

  SS.  **Potential claim** means:

      1.    With respect to Section I. Insuring Agreement A. Healthcare Professional Liability Coverage, a **healthcare event** or alleged violation of **residents' rights** that any **insured** has reason to believe would give rise to a claim . . . .

  BBB.  **Suit** means a civil proceeding in which damages because of injury caused by a **healthcare event**, **bodily injury**, **property damage** or **personal and advertising injury** to which this insurance applies are alleged. **Suit** includes:

      1.    an arbitration proceeding or pre-suit medical panel review in which such damages are claimed and to which the **insured** must submit pursuant to law or contract or does submit with the insurer's consent; or

      2.    any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with the insurer's consent.

**Ex. 20**, Section IV.

40.    The Liability Policy contains the following exclusion regarding default judgments:

  A.  The following exclusions shall apply to all Insuring Agreements of this Policy. This policy excludes from coverage any **claim**, **loss**, **expense loss** or **defense expenses** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

                         \*\*\*

      7.    **Default Judgement**

  Any **claim** or **potential claim** that the insurer was unable to timely investigate or defend due to the acts or omissions of any **insured**, including any resulting damages from a default judgment.

**Ex. 20**, Section V.A.7.

41.    The insuring agreement in Umbrella Policy makes clear that the insurer will only "pay on behalf of the **insured** any **loss** and **defense costs** in excess of the **applicable underlying limit** as a result of a **medical incident** to which this insurance applies." **Ex. 21** at Section I.A.

42. The Umbrella Policy applies "only in excess of the applicable underlying limits" and the insurer "will not make any payment under [the Umbrella P]olicy unless and until . . . the total applicable limits of scheduled underlying insurance have been exhausted . . . ." **Exhibit 21** at Section III.G. and I.

*The Brian Center Defendants' Breach of the Liability Policy*

43. On March 28, 2022, Bridgeway was first notified of Mr. Gagnon's death and the potential of a claim via a quarterly Bordereau report emailed by the insured's third-party administrator.[1] The report summarized the incident and included a notation that "DC [defense counsel] has not been assigned, as no claim has been asserted."

44. Bridgeway acknowledged receipt of the "first notice of this loss" on April 7, 2022 and requested that the insured's third-party administrator "[p]lease keep [Bridgeway] advised of developments."

45. The next quarterly Bordereau report dated June 30, 2022 provided that there had been "[n]o further claim activity" and provided "will close file in the near term." The data entry for this incident was highlighted in yellow and the document contained the notation, "Please highlight any claims that can be closed in yellow."

46. On October 3, 2022, the third-party administrator emailed "an updated quarterly Bordereau report valued as of 9/30/2022." The email provided, "[a]s instructed on the reporting form, files that can be closed are highlighted in yellow; these files will be omitted from future quarterly Bordereau reports unless reopened." The accompanying Bordereau report no longer included the Gagnon incident.

---

[1] A "bordereau" is a document that summarizes multiple policies or, as in this case, potential claims and/or claims.

47. Bridgeway received no additional information about the Gagnon incident or the Underlying Lawsuit until after the affidavit of default had been filed by the plaintiff in the Underlying Lawsuit.

48. The Brian Center Defendants breached the above policy provisions when they failed to notify Bridgeway of the filing of the Underlying Lawsuit and failed to forward copies of the relevant legal papers.

49. The Brian Center Defendants' failure to keep Bridgeway apprised of the litigation prevented Bridgeway from timely investigating and defending the allegations.

50. The Brian Center Defendants allowed an order of default to be entered.

51. The Brian Center Defendants' failure to keep Bridgeway apprised of the litigation prevented Bridgeway from presenting liability defenses that could have been advanced in this case.

52. The acts and omissions of the Brian Center Defendants materially prejudiced Bridgeway.

53. Pursuant to the default judgment exclusion set forth in Section V.A.7 of the Liability Policy, any claim or potential claim that Bridgeway was unable to timely investigate or defend due to the acts or omissions of any insured, including any resulting damages from a default judgment, is expressly precluded from coverage.

54. Accordingly, Bridgeway has no obligation to defend the Brian Center or Mr. McCollum against the Underlying Lawsuit or indemnify the Brian Center or Mr. McCollum against any damages resulting from the order of default issued in the Underlying Action.

55. Furthermore, because coverage is not available under the Liability Policy, coverage is likewise unavailable under the Umbrella Policy.

## COUNT I
## DECLARATORY JUDGMENT

56. Bridgeway incorporates all foregoing allegations of this pleading.

57. The Brian Center Defendants were served with the Underlying Lawsuit but did not timely answer or otherwise respond, nor did the Brian Center Defendants notify Bridgeway of the existence of the Underlying Lawsuit or forward copies of the pleadings.

58. The Brian Center Defendants breached the Liability Policy by failing to keep Bridgeway apprised of the litigation in the Underlying Lawsuit.

59. The Brian Center Defendants breached the Liability Policy by allowing an order of default to be entered against them.

60. The Brian Center Defendants' failure to comply with the Policies' conditions materially prejudiced Bridgeway.

61. Coverage for the underlying lawsuit is precluded by, among other provisions, the default judgment exclusion set forth in Section V.A.7 of the Liability Policy.

62. Bridgeway is not obligated to defend or indemnify the Brian Center Defendants or any related entity in connection with the Underlying Lawsuit.

WHEREFORE, Bridgeway requests that the Court enter judgment declaring pursuant to 28 U.S.C. § 2201 that:

   A. Bridgeway is not obligated to defend or indemnify the Brian Center Defendants or any related entity against the Underlying Lawsuit;

   B. Bridgeway is entitled to other such relief as this Court deems just and proper.

Respectfully submitted,

*/s/Christy E. Mahon*
Christy E. Mahon, Fed. I.D. No. 7896
Mark S. Barrow, Fed. I.D. No. 1220
Sweeny, Wingate & Barrow, P.A.
Post Office Box 12129
Columbia, SC  29211
(803) 256-2233

Ezra S. Gollogly (*pro hac vice* forthcoming)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202

*Attorneys for Bridgeway Insurance Company*

July 3, 2024